UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:09-CR-233 |
| | ) | |
| DWAYNE SWIMS, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL SENTENCING MEMORANDUM ON BEHALF OF DWAYNE SWIMS

On August 29, 2011, the Defendant, by counsel filed a Sentencing Memorandum. Swims' counsel offers the following Supplemental Memorandum in further support of a just and reasonable sentence.

### I. Response to Government's Arguments.

In its memorandum filed October 25, 2011 and reaffirmed on November 16, 2011, the Government acknowledges that in the event that a Buchmeier letter is sent, received, and relied upon by the Defendant, then the convictions for which a Defendant's civil rights are restored cannot be utilized as predicates for an Armed Career Criminal conviction. The Defendant has subpoenaed the pertinent documents from the Illinois Department of Correction but has yet to receive them. Upon receipt, a copy of the correspondence will be provided to the Court for consideration upon this issue. The Defendant will testify at hearing that he did receive such a letter, that he read it (or was read to him), and that he relied upon its contents.

The Government's second argument responds to Swims' objection that the crime reported in Paragraphs 58 and 59 does not constitute a crime of violence. The next to the last sentence of Paragraph 59 reads as follows:

> "This was a burglary of a business."

The burglary of a business does not constitute a crime of violence for purposes of the Career Offender Guideline in most instances. See United States v. Hoults, 240 F.3d 647 (7th Cir. 2001), United States v. Thornton, 463 F.3d 693 (7th Cir. 2006), and United States v. Nelson, 143 F.3d 373 (7th Cir. 1998). This is not to say that the burglary of a business cannot constitute a crime of violence, but the Trial Court is limited to the conduct set forth in the Indictment and Information in making such a determination. See, Nelson, 143 F.3d at 374. There is nothing in the Presentence Report nor the charging documents which would substantiate that the burglary of the business in question presented a substantial risk of serious injury to anyone. Therefore, the crime set forth in Paragraphs 58 and 59 is not a crime of violence for the Criminal Career Offender enhancement.

The United States' third argument is that the firearm enhancement pursuant to U.S.S.G. §2K2.1(b)(6) at Paragraph 38 of the Presentence Report is justified. The Government cites United States v. Carroll, 324 F.3d 866 (7th Cir. 2003) for the proposition that the enhancement is appropriate. However, Carroll does not support the enhancement in the present case. The District Court made a finding in Carroll that the apartment in question was a stash house for drugs, sparsely furnished, contained almost no food, few clothes, and little furniture. Id. at 873. The police had found five (5) pounds of marijuana, a small quantity of cocaine, and a gun hidden in the bathroom. Conversely, in the present case, this was a family residence rented by the Defendant, his wife, and step-daughter. All of the controlled buys in question, were outside of

the premises, in the backyard of 4736 Hickory Avenue in Hammond, Indiana where the Defendant resided. As such, the weapon was not even present at the time the Confidential Informant made the purchases in question. Furthermore, even if the Court were to find that the firearm was possessed in close proximity to the drugs in question, it is clearly improbable that the weapon was connected with the offense. 343 F.3d at 873; application note 3 to U.S.S.G. §2D1.1(b)(5).

First, the gun in question was a Stevens .410 gauge shotgun which was located in the rafters of the kitchen pantry. The shotgun in question was missing the forearm and according to the Government's expert it was manufactured sometime in the 1930's. Although it was operable, there was no ammunition anywhere within the house nor in the chamber of the gun. Further, it was never alleged by the Government or observed by the Confidential Informant that the gun was ever in the possession of Mr. Swims at any time during any of the transactions in question. Mr. Swims explained to the Government agents that when he moved into the house, that he and his wife found the gun in the kitchen pantry rafters. He told them that he took the gun down and researched on the internet whether or not it was an antique and might have some value so that he could sell it. The gun was not his nor did he ever intend to possess it for any drug related purposes. Therefore, even if the Court determined that he constructively possessed it, (which he has admitted by Plea), it is not probable that it was used in relation to a drug crime.

The fourth argument made by the Government is in response to the convictions in Paragraphs 61 and 66 which they concede to be the same. This would result in a three (3) level decrease in the Defendant's criminal history and is corroborated by Exhibit "A" attached hereto.

## II. Additional 3553(a) Factors.

### A. Mr. Swims is unlikely to recidivate.

The United States Sentencing Commission has performed a 15 year study on recidivism. The study is entitled *"Measuring Recidivism: the criminal history computation of the Federal Sentencing Guidelines"*, a component of the 15 year report on the U.S. Sentencing Commission's legislative mandate (May, 2004). Available at: http://www.ussc.gov/publicat/Recidivism_General.pdf. According to that report, recidivism declines relatively consistently as age increases from 35.5% under age 21 to 9.5% over age 50. Id. at 12. Furthermore, stable employment in the year prior to arrest is associated with a lower rate of recidivism. Id. According to Paragraph 108 of the Presentence Report, Mr. Swims was employed from July 2009 up to and through his arrest on November 11, 2009 as a telemarketer paid on a commission basis averaging $100.00 per week. Prior to that, the worked for Protell in Lansing, Illinois from December, 2008 through July of 2009 again as a telemarketer. Furthermore, drug offenders are the least likely to recidivate of all. Id. at 13. Lastly, base offense level is not a predictor of recidivism. Id. at 13. Based upon the low probability of recidivism by Mr. Swims, in the event that he qualifies as a career offender, a guideline sentence is not appropriate.

### B. A Sentence Pursuant to the Career Offender Guideline is unwarranted in the present case.

In the event that the Court determines Mr. Swims is not an Armed Career Criminal due to the reinstatement of his civil rights pursuant to Buchmeier, the Court will then have to determine whether or not he is a career offender under U.S.S.G. §4B1.1. However, because the Guidelines are now advisory under Booker, trial judges may now consider arguments that a guideline itself fails to properly reflect §3553(a) considerations, reflects unsound judgment, does not treat

defendant characteristics in a proper way, or that a different sentence may be appropriate regardless. See, Rita v. United States, 551 U.S. 338, 351, 357 (2007). That is judges may vary from the guidelines based on policy considerations and disagreements with the guidelines, Kimbrough v. United States, 552 U.S. 85, 101 (2007), especially when the commission did not act in its characteristic institutional role based upon empirical data and national experience. Id. at 109. Such an invitation is met with approval by the Court of Appeals. See, United States v. Corner, 598 F.3d 411 (7th Cir. 2010). There, the Seventh Circuit clearly recognized the Trial Court's authority to vary from the Career Offender Guideline but not from the Armed Career Criminal Act.

    The Career Offender Guideline originated from the directive of 28 U.S.C. §994(h). It is part of the Sentencing Reform Act of 1984 (S.R.A). That section directed the commission to assure that the guidelines specify sentences at or near the maximum term authorized for specified defendants. That is, defendants 18 years or older convicted of a crime of violence or specified drug offenses who had two or more prior felonies which were either crimes of violence or specified drug offenses. This directive was given to the commission rather than as a sentencing mandate to the Courts. See, S. Rep. No. 98-225 at 175 (1983). However, the commission did not use an "empirical approach" in developing the Career Offender Guideline, it instead keyed offense levels to statutory maximum sentences. This is contrary to the Supreme Court's determination that the commission employ an "empirical approach," basing guidelines on pre-guideline practice so that a particular guideline might reflect a rough approximation of a sentence that will achieve §3553(a) subjectives. Rita, 515 U.S. at 350.

    The Career Offender Guideline exceeds the expressed terms of §994(h) by including a definition of "crime of violence" which is broader than the definition intended by Congress, and

including offenses that are not "felonies" as defined by Congress. While the Career Offender Guideline was meant to target drug traffickers in an extremely lucrative sideline with established ties outside of the United States, S. Rep. No. 98-225 at 175, 256, the typical drug traffic prosecution in federal court today does not fit within that description. That is the largest portion of drug offenders are couriers and mules and the largest portion of crack offenders are street level dealers. U.S.S.C., Special Report to Congress: Cocaine and Federal Sentencing Policy at 20-21, 85 (May 2007). It is not at all unusual for a CI working with law enforcement to make repeated buys of small amounts for the purpose of increasing the punishment under the drug trafficking statutes, the drug guidelines and the Career Offender Guideline. See, United States v. Nellum, 2005 W.L. 300073 N.D. Ind. 2005 (Defendant could have been arrested after first sale, but agent purchased the same amount on three (3) subsequent occasions, doubling guideline sentence from 87-108 months to 168-210 months).

By the Commission failing its institutional role, a number of courts have held that they will not be bound by the guideline and disagree with the guideline on policy grounds. See, United States v. Pruitt, 502 F.3d 1154, 1167-70 (10th Cir. 2007) (O'Connell J., concurring) (collecting cases), cert. granted, judgment vacated, 128 Sup.Ct. 1869 (2008). Therefore, it is respectfully requested that this Court find that the commission failed to employ an empirical approach and that there exists no policy grounds incorporating the §3553(a) factors which would warrant a sentence pursuant to the offender guideline.

Based upon the above, it is respectfully requested that the Defendant be incarcerated for a term of not more than six (6) years, and that he be placed on supervised release for an additional five (5) years to be monitored by probation.

Respectfully submitted,

DWAYNE SWIMS


By:   /s/ R. Brian Woodward
       R. Brian Woodward, #2303-45


Woodward, Buls, Blaskovich & King, LLP
9223 Broadway, Suite A
Merrillville, Indiana 46410
Phone: (219) 736-9990
Attorney for Defendant

```
                   ILLINOIS DEPARTMENT OF CORRECTIONS                PAGE    1
                      OFFENDER TRACKING SYSTEM    RM       RUN DATE  07/05/11
                      OFFENDER CUSTODY HISTORY              RUN TIME  10.22.49


   NAME: SWIMS, DWAYNE                       IDOC #: N12260
   DATE OF BIRTH:      07/19/1962        CURRENT STATUS: DISCHARGE
                                         CURRENT LOCATION : DISCHARGE


RECORDED PERIODS OF IDOC INCARCERATION

MVMT DATE    MVMT TYPE               PARENT INST
10/04/2006   DISCHARGE OUT           VIENNA
10/04/2004   PAROLE OUT              VIENNA
09/03/2002   ADMIT IN                GRAHAM
09/21/2000   DISCHARGE OUT           CENTRALIA
09/21/1998   PAROLE OUT              CENTRALIA
07/20/1998   ADMIT IN                JOLIET
07/10/1986   DISCHARGE OUT           MENARD
06/18/1982   PAROLE OUT              NOT FOUND

MITT/SENTENCE INFORMATION
                                                          CLASS YR  MO   DAY
01C66077101  COOK           AGG UNLAWFUL USE OF WEAPON/VEH CL:4 0003 00 0000
MITT ADMIT: 09/03/2002  SENT DATE: 04/04/2002  DISC/REM DATE: 10/04/2006

01CR1172901  COOK           AGGRAVATED ROBBERY             CL:1 0008 00 0000
MITT ADMIT: 09/03/2002  SENT DATE: 08/16/2002  DISC/REM DATE: 10/04/2006

97CR15679    COOK           BURGLARY                       CL:2 0003 00 0000
MITT ADMIT: 07/20/1998  SENT DATE: 07/13/1998  DISC/REM DATE: 09/21/2000

8117295      COOK           THEFT >$300-$10K               CL:3 0002 00 0000
MITT ADMIT: 06/26/1981  SENT DATE: 06/19/1981  DISC/REM DATE:
```

* THE CUSTODY HISTORY REPRESENTED IN THIS DOCUMENT IS TAKEN FROM THE ELECTRONIC RECORDS MAINTAINED IN THE ILLINOS DEPARTMENT OF CORRECTIONS BASED ON MASTER FILE PAPER RECORDS.  MASTER FILES FOR EACH OFFENDER ARE CURRENTLY KEPT IN STORAGE AT DIFFERENT ILLINOIS DEPARTMENT OF CORRECTIONS FACILITIES AROUND THE STATE BASED ON THE LOCATION OF THE OFFENDER UPON REACHING DISCHARGE FOR THAT INCARCERATION FROM THE ILLINOIS DEPARTMENT OF CORRECTIONS.  THE ELECTRONIC CUSTODY HISTORY DOCUMENT WAS CREATED IN AN EFFORT TO PROVIDE AN OVERVIEW OF THE CUSTODY HISTORY OF AN OFFENDER, TO PROCESS THE REQUEST MORE EFFICIENTLY, TO CUT THE COSTS, AND TO IMPROVE THE HANDLING TIME.

RECORD OFFICER/DESIGNEE: _____



EXHIBIT A